OPINION. Van Fossan, Judge: We have before us the sole question whether or not the petitioner is entitled to be classified as a personal service corporation within the purview of section 725 of the Internal Revenue Code.[1] The statute itself provides a definition which sets forth the following essential elements: (1) The income of the corporation must be ascribed primarily to the activities of its shareholders. (2) They must be regularly engaged in the active conduct of its affairs. (3) They must be the owners of at least 70 per cent in value of each class of its stock. (4) Capital must not be a material income-producing factor. Respondent raises no question as to the second and third requirements having been met. His position is twofold: (1) That the efforts of the three contact men, whom he calls “field engineers,” and the services of other employees contributed substantially to petitioner’s income, as shown by the amount of compensation paid to them in comparison to the salaries of Dubosclard and his associate stockholders, and (2) that capital was a material income-producing factor. The petitioner contends that it has brought itself strictly within the terms of the statutory definition. We shall first consider the respondent’s second point, that capital was a material income-producing factor, since it requires little discussion, in view of the state of the record. The petitioner started with a capital of $10,000. Dubosclard testified that the capital was an “ornament” on the balance sheet; that from the day the petitioner began its operations it drew on Farnham for its pay roll commitments and that perhaps for a day or two capital was used until the draft was covered. The petitioner had no physical assets. All equipment, including even drafting tables and tools, was rented. The large sums due to the contact men were paid after the Government accepted and paid for the machines ordered through them- Thus, at no point in the conduct of the petitioner’s business was any substantial amount of capital required. Its method of doing business precluded the use of more than a nominal amount of capital. The petitioner’s balance sheets show that on June 30, 1942, its cash account was $8,000, while on June 30,1943 and 1944, it was $4,864.09 and $4,930.79, respectively. The petitioner’s original capital was cash, but it may have been converted to another form of asset. However, assuming that it still remained in the cash form, the amount was reduced by $2,000 on June 30, 1942, and by a little over a half of the original capital in succeeding years. Compared with the large amounts of accounts receivable shown on the balance sheet (and there is no record of the petitioner’s total yearly receipts), the amount of capital is very small. It was not a material factor in producing the petitioner’s income. The respondent’s main contention, that the petitioner’s income was not to be ascribed primarily to the activities of Dubosclard, Reimann, Georger, and Boutet, its sole stockholders, rests on his conclusion that the three contact men and other employees contributed substantially to the production of income. A short and complete answer to respondent’s argument might well be to point out that the word “primarily” and the word “substantially” are not interchangeable equivalents. One might admit that the three contact men contributed “substantially” to the production of income without denying or negating the fact that the income was nonetheless to be “ascribed primarily” to the activities of the stockholders. Thus it might well be said that respondent’s whole argument on this phase of the case begs the question. It is our conclusion that petitioner’s income was to be ascribed primarily to its stockholders and not to the contact men. While it is recognized that the three contact men were paid large sums for their services, the basis of their compensation was a commission computed on a fixed percentage of the sale price of the machines. The sudden demand for such machinery to manufacture airplane spars and other parts resulted in the extraordinary amount of such commissions. We note from the record that this percentage was reduced and that the contracts with the contact men were later renegotiated. The character of the services rendered by the contact men is a much more important test than the amount of money they received. See H. Newton Whittelsey, Inc., 9 T. C. 700. The respondent stresses the skill and efficiency which he says they possessed and argues that they were essential in obtaining the orders from the airplane manufacturers, in the proper adaptation of the machinery to the changing needs, and to the successful manufacture and delivery of the completed equipment. Again we might admit respondent’s contention without fatality to petitioner’s claim to personal service classification. Undoubtedly, it was necessary to have intelligent contact men, but to admit that is not to establish that they were primarily responsible for petitioner’s income. During the taxable years little effort was required either to sell the ideas created by the petitioner or the completed machinery manufactured by Farnham. It was a seller’s market in which demand far outran supply. The three field representatives of the petitioner were stationed at strategic points in the United States in order to keep in constant touch with the current needs of airplane manufacturers, to arrange for conferences with Dubosclard, and to serve as “trouble shooters” after machines were sold and installed. Their work was important, but they contributed little to the phase of petitioner’s activity that was in demand and to which its income was primarily to he ascribed, namely, designing and engineering. The success of petitioner’s business was due primarily to Dubosclard, Reimann, and Georger. In applying Dubosclard’s genius and peculiar talents to the complicated problems of construction, Reimann and Georger played an important part. They were the type of men whom it would have been difficult to replace. Their services were vitally important to petitioner’s smooth and efficient operation. They had been carefully trained by Dubosclard in the particular field in which they were engaged. During his frequent absences from the plant (consuming perhaps one-half of each year), they took over and carried on the work. Together with Dubosclard, they constituted a team, all members of which were essential, and as a team, were primarily responsible for petitioner’s success. It is our conclusion that petitioner’s income was to be ascribed primarily to the activities of its stockholders. It follows that petitioner is entitled to personal service classification. Decision will loe entered under Rule 50, SBC. 728. PERSONAL SERVICE CORPORATIONS. (a) Definition. — As used in this subchapter, the term “personal service corporation” means a corporation whose income is to be ascribed primarily to the activities of shareholders who are regularly engaged in the active conduct of the affalrB of the corporation and are the owners at all times during the taxable year of at least 70 per centum in value of each class of stock of the corporation, and in which capital is not a material income-producing factor; • * •